JOHN R. GOTT,

*vs.*

LIVE POULTRY TRANSIT COMPANY, a corporation organized under the laws of the State of Delaware, now dissolved.

In the Matter of the Exceptions of Continental National Bank and Trust Company of Chicago, Executor of the Estate of Susan M. Dickinson, deceased, to the claims of certain holders of six per cent. Equipment Purchase Notes and seven per cent. Gold Debentures of Live Poultry Transit Company.

Continental National Bank, Executor of the Estate of Susan M. Dickinson, deceased,

Appellant,

*vs.*

Frank X. Mudd, Roscoe C. Jenkins and Charles S. Davis, Trustees in dissolution for Live Poultry Transit Company, Franklin D. Baird, Charles Ethan Davis, and others,

Appellees.

In the Matter of the Exceptions of Catholic Bishop of Chicago to the claims of holders of six per cent. Equipment Purchase Notes of Live Poultry Transit Company.

Catholic Bishop of Chicago,

Appellant,

*vs.*

Frank X. Mudd, Roscoe C. Jenkins and Charles S. Davis,

Trustees in dissolution for Live Poultry Transit Company, Franklin D. Baird, Charles Ethan Davis, and others,

Appellees.

*Supreme Court, On Appeal, June 21, 1932.*

PENNEWILL, C. J., and RICE, HARRINGTON, RICHARDS, and RODNEY, JJ., sitting.

*Christopher L. Ward, Jr.*, of the firm of Marvel, Morford, Ward & Logan, for appellants.

*Aaron Finger*, of the firm of Richards, Layton & Finger, for appellees.

PER CURIAM: The court are of the opinion that the orders of the Chancellor entered in the above cases may be affirmed without an extended opinion. See *ante p.* 138, 156 A. 292, for report of the Chancellor's opinion.

In the determination of the cases in the court below there was no question of law involved. The question necessary to be decided was one of fact only, viz., whether the assets of the former Live Poultry Transit Company, purchased by the new company of the same name and organized for the purpose of taking over the assets and business of the old company, were overvalued. The exceptants contended in the court below that such assets were overvalued to the extent of $2,160,000, the amount of the six per cent. notes that were issued without consideration in the formation of the new company.

The Chancellor, in his opinion, said:

"The trouble with this contention is that it is based on an assumption of fact which no evidence in the case supports. The crucial test of the contention's force is whether the assets were over-valued. That is a question of fact. Not a word of proof has been offered upon it.

I am asked to assume that there was in fact an over-valuation. There is no justification for such an assumption. The transaction on its face does not support it; for it is entirely conceivable that the assets may have been well worth what the purchaser paid. If they were, I am unable to see why the selling company, and indirectly its stockholders should not be permitted to take stock plus notes for them. Certainly it could have received stock plus cash, the cash being obtained by the purchaser from sale of the notes. Then why could it not receive stock plus the notes instead of their equivalent in cash?

"There being a complete absence of evidence tending to show an over-valuation, the basis for the exceptants' argument is wanting."

The Chancellor, therefore, having found as a fact, that there was no proof of overvaluation of the assets of the selling company, and such finding being clearly warranted by the evidence in the case, we feel bound to affirm the orders of the lower court.